**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**LATASHA BONET, on behalf of T.B.,**

    **Plaintiff,**

    **v.**                                                                        **1:13-CV-924**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

    **Defendant.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**THOMAS J. McAVOY**
**Senior United States District Judge**

## DECISION and ORDER

Plaintiff Latasha Bonet, on behalf of T.B., her minor son, brought this suit under § 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act. Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying the applications for benefits is not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision is supported by substantial evidence and made in accordance with the correct legal standards. Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

1

## I. PROCEDURAL HISTORY

This case concerns the Plaintiff Latasha Bonet's application for Supplemental Security Income ("SSI") to support T.B. ("Claimant'), her minor son. The record indicates that T.B., who is eleven years old, suffers from Attention Deficit Hyperactivity Disorder ("ADHD") and Oppositional Defiant Disorder ("ODD"). Since completing kindergarten, he has been a student at a day treatment program because of multiple academic and behavioral difficulties.

Plaintiff filed an application for SSI on January 7, 2011. (Social Security Administrative Record ("R."), dkt. # 8, at 164-169). The Commissioner initially denied the claim on April 6, 2011. (R. at 129-140). On April 25, 2011, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Id. at 141). That hearing was held on March 29, 2012. (Id. at 153-161). The ALJ, Carl E. Stephan, issued an unfavorable decision on April 13, 2012. (Id. at 34-57). Plaintiff filed a request for review of the decision, which the Social Security Appeals Council rejected on June 6, 2013. (Id. at 1-6).

ALJ Stephan's April 13, 2012 Decision thus became the final determination of the Commissioner. As indicated above, Plaintiff brings this action under § 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to review this final decision of the Commissioner.

## II. FACTS

The parties do not dispute the underlying facts of this case as set forth by Plaintiff in her memorandum of law, though they do dispute the significance of those facts. Accordingly, the Court assumes familiarity with these facts and will set forth only those

2

facts material to the parties' arguments.

## III.   DISABILITY ASSESSMENT FOR CLAIMANT

T.B. is a minor child. "The Social Security Administration has established a three-step evaluation process by which to determine whether individuals under the age of 18 are disabled. Shatraw v. Astrue, No. 11cv13, 2012 U.S. Dist. LEXIS 21931 at *3 (N.D.N.Y. Feb. 22, 2012) (citing 20 C.F.R. § 416.924(a)). First, the Commissioner asks whether the child is engaged "in substantial gainful activity." Id. If so, no disability exists. Id. If not, "the ALJ must then determine whether the child has 'an impairment or combination of impairments that is severe.'" Id. (quoting 20 C.F.R. § 416.924(a)). Without out such impairments, the Commissioner must find that no disability exists. Id. When the Commissioner finds such impairments, "the final inquiry is whether the child's impairment or combination of impairments 'meets, medically equals, or functionally equals the listings.'" Id. (quoting 20 C.F.R. § 416.924(a)). A child with such impairments is disabled. Id.

As in many such cases, the question here is whether the Claimant's impairments "functionally equal" an impairment included in the listing. Such a finding of functional equivalence requires "'marked' limitations in two, or an 'extreme limitation' in one, of the following six 'domains': (i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for yourself; and (vi) [h]ealth and physical well-being.'" Id. at *5 (quoting 20 C.F.R. §§ 416.926a(a), (b)(1)(i)-(vi)). A finding of functional equivalence is a

3

finding that the Claimant is disabled under the Act.[1]

## IV. THE COMMISSIONER'S DECISION

ALJ Stephan issued his decision denying Claimant's benefits on April 13, 2012. (R. at 34-57). The ALJ noted that a person "under the age of 18 will be considered disabled if he has a medically determinable physical or mental impairment that results in marked and severe physical limitations, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." (Id. at 37). The ALJ applied the three-step sequential evaluation process established by 20 C.F.R. § 416.924(a) to make this determination.

At step one, the ALJ concluded that Claimant was not engaging in substantial gainful activity, and had not done so since the application date, December 22, 2010. (Id. at 40). At step two, the ALJ found that claimant suffered from the severe impairments of attention deficit hyperactivity disorder ("ADHD") and oppositional defiant disorder ("ODD"). (Id.). At step three, the ALJ determined that the Claimant "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Id.). He found that the Claimant's "impairment does not meet or medically equal the listing 112.11, Attention Deficit Hyperactivity Disorder." (Id.). Claimant's ADHD was not "manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity." (Id.). The ALJ also decided that Claimant did "not have an impairment or combination of impairments that functionally equals the severity of the listings[.]" (Id.).

---

[1]The Court notes that the ALJ correctly defined "marked" and "extreme" limitations in his decision and will rely on those definitions here. They are related below.

4

The ALJ found that a marked limitation occurs when the "impairment(s) 'interferes seriously' with the ability to independently initiate, sustain, or complete activities." (Id. at 39). Serious limitation can come "when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities." (Id.). In addition, a "marked" limitation is:

1. A limitation that is 'more than moderate' but 'less than extreme.'

2. The equivalent of functioning that would be expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

3. A valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and this day-to-day functioning in domain-related activities is consistent with that score.

4. For the domain of health and physical well-being, frequent episodes of illnesses because of the impairment(s) of frequent exacerbations of the impairment(s) that result in significant, documented symptoms or signs that occur: (a) on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more; (b) more often than 3 times in a year or once every 4 months but lasting longer than 2 weeks, if the overall effect (based on the length of the episodes(s) or the frequency) is equivalent in severity.

(Id.) (citing 20 C.F.R. § 416.926(a)(e)(2)). The ALJ also found that an "extreme" limitation occurs when the "impairment(s) interferes 'very seriously' with [claimant's] ability to independently initiate, sustain, or complete activities." (Id.). An extreme limitation can occur in connection with one activity "or when the interactive and cumulative effects of [claimant's] impairment(s) limit several activities. (Id.). An extreme limitation is:

1. A limitation that is 'more than marked.'

2. The equivalent of functioning that would be expected on standardized testing with scores that are at least three standard deviations below

5

> the mean.
>
> 3. A valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and [claimant's] day-to-day functioning in domain-related activities is consistent with that score.
>
> 4. For the domain of health and physical well-being, episodes of illness or exacerbations that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a 'marked' limitation.

(Id. at 39-40) (citing 20 C.F.R. § 416.926a(e)(3)).

After relating the evidence of record regarding Claimant's impairments, the ALJ reached conclusions as to the level of impairment in each of the six domains named in the regulations. The ALJ found that the Claimant had "less than marked limitation in acquiring and using information." (Id. at 46). Likewise, the ALJ determined that Claimant's limitations in the area of "attending and completing tasks" was less than marked. (Id. at 47). In the area of "interacting and relating to others," however, the ALJ concluded that Claimed had a "marked limitation." The ALJ found no limitation in the domain of "moving about and manipulating objects." (Id. at 49). In the area of "ability to care for himself," the ALJ concluded that Claimant had less than marked limitation. (Id. at 50). Finally, the ALJ determined that Claimant had no limitation in the area of "health and physical well-being." (Id.). Because the ALJ found only one marked limitation in these six categories, the ALJ decided that Claimant was not disabled within the meaning of the Social Security Act. Id. at 51-52.

Claimant challenges this decision, asserting that substantial evidence supports the conclusion that the Claimant suffers from marked limitations in at least two domains.

### IV. STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. *See* 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990); Shane v. Chater, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler, J.)(citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; *Cruz*, 912 F.2d at 11; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). A Commissioner's finding will be deemed conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g); see also Perez, 77 F.3d at 46; Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted). In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997)(citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)); Alston v.

Sullivan, 904 F.2d 122, 126 (2d Cir. 1990). However, although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990)(quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

**V.    DISCUSSION**

Claimant challenges the Commissioner's decision on several bases. The Court will address each in turn, as appropriate.

**A.    Substantial Evidence to Support the Commissioner's Findings**

Claimant challenges the Commissioner's decision that T.B. does not suffer from marked impairments in the domains of caring for self and attending and completing tasks. Claimant contends that these findings are not supported by substantial evidence. The Commissioner insists that they are.

**1. Caring for Self**

Claimant contends that substantial evidence fails to support the Commissioner's finding that T.B. does not have a marked limitation in the area of caring for self. Claimant argues that, in finding that T.B.'s limitation were not marked in this area, the ALJ relied on selected portions of the records that accentuated the positive aspects of T.B.'s experience at school. The ALJ, he argues, ignored reports from T.B.'s teachers that he continued to need constant supervision in a highly structured treatment program to prevent him from losing control, and that this situation had not changed during his time in the program. Claimant also contends that the ALJ overstated the improvement in behavior caused by

8

medications. Even when medicated, he argues, T.B. continued to have problems in the classroom. Finally, Claimant argues that the ALF failed properly to consider the effects of T.B.'s highly structured educational placement on his conduct.[2]

The Court finds that the ALJ failed to apply the proper legal standard in making the disability determination with regard to this domain and that the case must be remanded to the Commissioner to apply the correct standard. Social Security regulations require hearing officers to consider the effect of a "structured or supportive setting" on a claimant.

---

[2]Social Security regulations provide that in the "domain" of caring for yourself, "we consider how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area." 20 C.F.R. § 416.926a(k). This domain "depends upon your ability to respond to changes in your emotions and the daily demands of your environment to help yourself and cooperate with others in taking care of your personal needs, health and safety." 20 C.F.R. § 416.926a(k)(1)(I). A child should have "a sense of independence and competence" and an effort to achieve such status "should be observable throughout . . . childhood." Id. A child Claimant's age "should be independent in most day-to-day activities (e.g., dressing . . . [and] bathing)", though reminders may still be necessary. The regulations establish that "[y]ou should be able to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify those circumstances where you feel good about yourself and when you feel bad." 20 C.F.R. § 416.92a(k)(2)(iv). A child should have a sense of "right and wrong, and what is acceptable and unacceptable behavior." Id. "[C]onsistent control over . . . behavior" should be developing, and the child "should be able to avoid behaviors that are unsafe or otherwise" unhealthy. Id. The child should "begin to imitate" more adult behaviors. Id. The regulations contain a number of examples of "limited functioning" in this domain. 20 C.F.R. § 416.926a(k)(3). The list of such examples is not exhaustive, and "do not necessarily describe a 'marked' or 'extreme' limitation." Id. Those examples include: putting "non-nutritive or inedible objects in [the] mouth"; frequently engaging in "self-soothing activities showing developmental regression" like sucking one's thumb or "re-chewing food" or having "restrictive or stereotyped mannerisms" such as "body rocking" or "headbanging"; not being able to bathe or dress oneself appropriate for the child's age; "engag[ing] in self-injuries behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take . . . mediation) or "ignor[ing] safety rules"; the child fails to "spontaneously pursue enjoyable activities or interests"; and the child's eating and sleeping patterns are disturbed. 20 C.F.R. § 416.926a(k)(3)(i-vi).

9

20 C.F.R. § 416.924a(iv)(C). Such settings "may minimize signs and symptoms of" claimant's "impairment(s) and help to improve [claimant's] functioning . . . but [a claimant's] signs, symptoms, and functional limitations may worsen outside this type of setting." Id. The regulations require consideration of a claimant's "need for a structured setting and the degree of limitation in functioning [claimant] you have or would have outside the structured setting." Id. Thus, even when a claimant can function well inside such a structured setting, the regulations require consideration of "how [a claimant] function[s] in other settings and whether [claimant] would continue to function at an adequate level without the structured or supportive setting." Id. Since "the statute expressly states that because children 'may be more impaired in their overall ability to function in an age-appropriate manner than their symptoms and signs would indicate,' the ALJ *must* 'consider the ability to function independently, appropriately, and effectively in an age-appropriate manner outside of [a] highly structured setting.'" Marien ex rel. Paez v. Commissioner, SSA, No. 94cv4577, 1996 US Dist. LEXIS 2570, *25 (S.D.N.Y. Mar. 5, 1996) (citing 20 C.F.R. § 416.924c(f)) (emphasis in original). A failure to consider the effects of a such a setting can be grounds for reversal. See Smith v. Massanari, No. 00cv402C, 2002 U.S. Dist. LEXIS 26503 at *18-19 (W.D.N.Y. Mar. 16, 2002) (reversing and awarding benefits after finding "that the ALJ erred in failing to fully and properly consider the effects of [child's] structured educational placement on his overall functioning, as required by § 416.924c of the Commissioner's regulations).

The ALJ's decision in the area of "caring for self" finds that:

> In the past, the claimant has demonstrated a history of engaging in unsafe behaviors, such as playing with matches. However, he has been placed in a new school since that time and is in a very structured environment. The claimant

10

> sometimes engages in unsafe behaviors. The claimant needs time and space before he is able to process his behavior with a teacher and make a plan for the next time he is feeling frustrated, upset or overwhelmed. On most occasions, the claimant can return to the problem after a few minutes. The claimant has learned to connect his feeling to his behavior and make plans for how he will cope appropriately the next time he is upset. The claimant has a personal safety plan in place in which the claimant will ask for a break outside, taking a break in the classroom vacation spot and playing with small toys. Ms. Ladd noted the claimant has a very difficult time when he is unmedicated. However, the claimant is much improved while on his medication. Therefore, the undersigned believes the claimant has a less than marked limitation in his ability to care for himself.

(R. at 50-51).

The ALJ's decision therefore focuses on the effects of the structured classroom environment in permitting Claimant to engage in safe and appropriate behavior. While the ALJ's decision noted the reports of Claimant's mother that he did not function well in the home environment, the ALJ's findings in this area do not take into account the differences between the two settings and makes no attempt to compare them. (See R. at 41-42). The Court notes that the evidence before the ALJ demonstrated the highly structured nature of the Claimant's classroom experience. (See R., at 266-284). The classroom itself contains 6 children, one teacher, and an aide. (Id. at 281). At his school, Claimant received individual therapy once per week, "Affective Group" once per week, and Day Treatment 5 days a week for six hours. (Id. at 272). His treatment plan at school recognized his difficulties in concentrating and maintaining proper discipline and outlined a series of steps to be taken when he acted out. (Id. at 272-273). The ALJ also had numerous reports of Claimant's dangerous behavior, even in this structured setting. (See R., 239-265). Claimant frequently fought with his classmates, inappropriately touched others, ran around classrooms and parts of the school, including a parking lot and a fire escape, in ways that endangered himself and others, and refused to wear a seat belt and

11

behave safely on a school bus.  (Id.).   Though the goal of Claimant's treatment program was an eventual "[r]eturn to district," that goal had not been reached when the ALJ made his decision.  (Id at 274).

Despite recognizing the positive impact that such a highly restrictive environment had on Claimant's behavior, the ALJ made no effort to compare the results for the Claimant under this structured environment with Claimant's situation in a less-structured setting.  The ALJ's opinion makes no effort to determine whether Claimant can "function independently, appropriately, and effectively in an age-appropriate manner outside of [a] highly structured setting.'" Marien, 1996 US Dist. LEXIS 2570 at *25.  The ALJ simply made a determination about the credibly of Claimant's mother's claims about his behavior at home.  Such a finding does not address Claimant's ability to function outside the structured environment.  This failure to compare the two environments ignores the Commisioner's regulations and constitutes a failure to apply the appropriate legal standard.

The Court recognizes that Claimant raised a similar issue in an earlier case involving a previous application for benefits and a previous decision by an ALJ.  See Bonet v. Colvin, 523 Fed. Appx. 58 (2d Cir. ).  The Court there rejected Claimant's argument that, when the structured environment was considered, "'there is substantial evidence that T.B. has met' the requirements for SSI." Id. at * 59.  The Court rejected that argument because the question in the case was not whether there was substantial evidence to support the Claimant's position, but whether "substantial evidence supports *the ALJ's* decision."  Id. (emphasis in original).  The Court agrees that this Court is not permitted to perform a consideration of the structured environment on its own and reverse

12

the decision of the ALJ. The Court is permitted, however, to determine whether the ALJ applied the correct legal standard. See, e.g, Tejada, 167 F.3d at 773 (2d Cir. 1999). In failing to consider the structured environment as required by the regulations, the ALJ did not apply the correct legal standard. The Court will therefore remand the case to the ALJ to compare Claimant's ability to function in an unstructured environment and determine whether such a comparison should lead to a finding that Claimant suffers from a marked or severe limitation in his ability to care for himself. Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.

### 2. Attending and Completing Tasks

Claimant likewise argues that the ALJ lacked substantial evidence to conclude that T.B. had less then marked limitations in the domain of attending and completing tasks. The evidence indicates that T.B. has difficulty completing tasks and paying attention, and the ALJ improperly ignored and minimized this evidence.[3]

---

[3]The Social Security regulations provide that in the "domain" of attending and completing tasks, regulators "consider how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them." 20 C.F.R. 416.926a(h). For a child of claimant's age, the regulations provide that "you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments." 20 C.F.R. § 416.926a(h)(2)(iv). A student "should be able to concentrate and not make careless mistakes" in schoolwork "beyond what would be expect in other children" of the same age who lack impairments. Id. A student can switch "activities without distracting" himself or others "and stay on task and in place when appropriate." Id. Attention should be focused enough "to participate in group sports, read by yourself, and complete family chores." Id. A student "should be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation." Id.

In reaching his conclusion that Claimant had less than marked limitations in attending and completing tasks, the ALJ determined that:

> [the social worker] reported that claimant had an obvious problem with paying attention when spoken to directly, sustaining attention during play, refocusing to task when necessary, carrying out multi-step instructions, waiting to take turns, changing from one activity to another and working without distracting himself and others. [The teacher] reported that the claimant has a very serious problem focusing long enough to finish [an] assigned activity or task, complete class assignments, competing [sic] work accurately without careless mistakes, working without distracting self or others and working at a reasonable pace/finishing on time. The claimant has a serious problem refocusing to task when necessary, carrying out single or multi-step instructions and changing from one activity to another without being disruptive. However, the claimant likes to complete academic tasks independently or with minimal hurdle help from his teachers. The claimant can maintain attention for at least thirty minutes. Therefore, the claimant has a less than marked limitation in attending and completing tasks.

(R. at 46-7).

In this setting, too, the Court will find that the ALJ failed to consider the effects of Claimant's highly structured school environment on his ability to attend and complete tasks, and made no effort to compare that environment to a non-structured one. The ALJ's decision makes no attempt to differentiate between a highly structured school setting where Claimant faced constant reminders to remain on task and a regular school setting where the student-teacher ratio is much higher and the individualized prompting to remain on task would be far less frequent. The ALJ also made no effort to analyze whether Claimant's ability to attend to and complete tasks differed at home, and how this affected the assessment in this domain. The Court will therefore remand the case to the ALJ to apply the correct legal standard and consider the effects of the highly structured environment on Claimant's ability to attend and complete tasks.

**V. CONCLUSION**

For the foregoing reasons, Plaintiff's motion on the pleadings is **GRANTED IN PART**, Defendant's motion on the pleadings is **DENIED**, and the Court **REMANDS** the case for a determination consistent with this opinion.

**IT IS SO ORDERED.**

Dated: February 18, 2015

_____
Thomas J. McAvoy
Senior, U.S. District Judge